[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 31, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-16208

_____

D. C. Docket No. 01-00190-CR-T-23

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEOVANNI QUINTERO RENDON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 31, 2003)**

Before TJOFLAT, HULL and FAY, Circuit Judges.

HULL, Circuit Judge:

This appeal presents the issue of whether a defendant may receive upward adjustments for being a captain of a vessel used for drug importation as well as an organizer and leader of the unlawful conspiracy. The district judge accorded both enhancements. We AFFIRM.

## I. BACKGROUND

While patrolling international waters in the Eastern Pacific Ocean on May 11, 2001, the crew of a United States Navy P3 surveillance airplane spotted a "go-fast" vessel traveling at high speed and followed it.[1] Shortly thereafter, the crew observed the occupants of the boat throwing bales overboard. The Navy P3 crew informed the United States Coast Guard Law Enforcement Detachment aboard the USS Halyburton of the position of the go-fast boat and also dropped a sonar buoy into the water to mark the location of the discarded bales.

A helicopter was launched from the USS Halyburton to investigate the go-fast boat. The helicopter videotaped the floating bales and followed the go-fast boat with a crew of four for several hours as it increased its speed and changed course. After failed attempts to contact the go-fast crew by both the USS Halyburton and the helicopter with communications equipment, the USS

---

[1]"Coast Guard officials refer to such vessels as 'go-fast' boats because they can travel at high rates of speed, which makes them a favored vehicle for drug and alien smuggling operations." United States v. Tinoco, 304 F.3d 1088, 1092 (11th Cir. 2002).

2

Halyburton launched a rigged hull inflatable boat to intercept the go-fast boat. When Coast Guard personnel boarded the go-fast boat, the four-man crew had their hands raised. Defendant-Appellant, Geovanni Quintero Rendon, identified himself as the captain and advised that they had departed from Caballo Beach, Colombia, the previous day to assist some lost fishermen. The other crew members were Julian Pineda Torres, John Caisedo Castro, and Carlos Estupinan Valencia.

Although the vessel flew no flag and contained no identifying markings or registration documents, Rendon stated that the boat was registered in Colombia. Colombian officials, however, were unable to confirm Rendon's claim of registry. Inspection of the boat revealed twenty-three barrels of fuel, fuel filters, containers of oil, a spare engine, and two high frequency radios. Coast Guard personnel found traces of cocaine in the forward compartment of the boat as well as on the port and starboard rails.

Rendon and the other crew members were moved to the USS Halyburton and detained. The go-fast boat was destroyed as a navigation hazard. The next morning, the USS Halyburton proceeded to the area where the cargo had been jettisoned and recovered forty-eight bales of cocaine. Subsequent analysis

revealed a net weight of 1,171 kilograms of cocaine with a seventy-percent purity level. Rendon and the other crew members were taken to Jacksonville, Florida.

A federal grand jury in the Middle District of Florida returned a two-count superseding indictment charging the four-man crew of the go-fast boat with conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine, in violation of §§ 1903(a), (g) and (j) of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. app. §§ 1901-1904; 21 U.S.C. § 841(b)(1)(A)(ii); and 18 U.S.C. § 2. Thereafter, Torres filed two motions to dismiss the indictment that challenged the constitutionality of the MDLEA. The first asserted that, under Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), both the MDLEA and 21 U.S.C. § 960 are unconstitutional. The second motion challenged the jurisdictional provisions of the MDLEA that provide that subject matter jurisdiction is a preliminary question of law to be determined by the trial judge.

Rendon adopted Torres's motions, and filed his own Apprendi-based motion to dismiss the indictment. The district judge denied all these motions to dismiss. At trial, Rendon informed the district judge that he wanted to plead guilty. He pled guilty to both counts of the superseding indictment without a plea agreement.

4

At the sentencing hearing, Rendon did not object to the facts in the Presentence Investigation Report. Rather, Rendon reiterated his jurisdictional objections, which the district judge overruled, and his objection to enhancements for both being a captain and organizer/leader.

During Rendon's sentencing, two of his codefendants, Castro and Torres, testified that Rendon had recruited them to participate in the conspiracy and paid them each 10,000,000 pesos. Both further testified that Rendon had been the captain of their vessel and had directed their efforts throughout the duration of the voyage. Castro testified that they met two boats with two people on each boat who placed the cocaine in Rendon's boat. Even when Torres was operating the boat, it was under Rendon's direction because Torres did not know where the cocaine was to be delivered. Torres also testified that Rendon ordered the codefendants to throw the cocaine overboard when he saw the Navy plane flying overhead.

Rendon was subject to a mandatory minimum imprisonment term of ten years and a maximum term of life as to each indictment count. 21 U.S.C. § 960(b)(1)(B). He was given upward adjustments for being both the captain of the go-fast boat and being an organizer or leader of the conspiracy. Rendon was

sentenced to concurrent terms of 360 months of imprisonment, sixty months of supervised release, and a $200 fine.

On appeal, Rendon raises three issues. He first argues that the district court erred in failing to dismiss the indictment because it lacked subject matter jurisdiction and, consequently, was without jurisdiction to sentence him. Second, he contends that the MDLEA violates Apprendi by incorporating the penalty provisions of 21 U.S.C. § 960. Third, he argues that the district court erred in giving him upward adjustments for being the captain of the go-fast boat as well as being an organizer and leader of the conspiracy. Fourth, he asserts that the district court erred in not granting him "safety valve" relief.

**II. DISCUSSION**

A. Subject Matter Jurisdiction Under the MDLEA

Rendon contends that the indictment under the MDLEA, should have been dismissed based on lack of subject matter jurisdiction because no nexus with the United States was proved. Consequently, he argues that there was no personal jurisdiction over him for sentencing because his seizure was neither in the territorial waters of the United States nor in United States Customs waters. He further challenges the constitutionality of 46 U.S.C. app. § 1903 facially and as applied because it allows prosecutions and punishment under conditions where

6

allegedly there is no jurisdiction.  He specifically argues that § 1903(f) removes the determination of jurisdiction as an element of the offense from the jury and places it solely on the trial judge, thereby violating Rendon's Fifth and Sixth Amendment rights based on United States v. Gaudin, 515 U.S. 506, 509, 115 S. Ct. 2310, 2313 (1995).

Our review of a district court's determination of subject matter jurisdiction as well as statutory interpretation is de novo.  Asociacion De Empleados Del Area Canalera (ASEDAC) v. Panama Canal Comm'n, 329 F.3d 1235, 1237-38 (11th Cir. 2003).  "In interpreting the meaning of a statute, it is axiomatic that a court must begin with the plain language of the statute."  United States v. Prather, 205 F.3d 1265, 1269 (11th Cir. 2000).  Under the MDLEA, "a 'vessel subject to the jurisdiction of the United States' includes . . . a vessel without nationality."  46 U.S.C. app. § 1903(c)(1)(A).  Additionally, "a 'vessel without nationality' includes . . . a vessel aboard which the master or person in charge makes a claim of registry, which claim is denied by the flag nation whose registry is claimed" or "a vessel aboard which the master or person in charge makes a claim of registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality."  Id. at § 1903(c)(2)(A), (C).

Under the plain statutory language, Rendon's argument that the district court lacked subject matter jurisdiction is unavailing. We addressed the jurisdictional and constitutional challenges to the MDLEA that Rendon raises in United States v. Tinoco, 304 F.3d 1088 (11th Cir. 2002), cert. denied, __ U.S. __, 123 S. Ct. 1484 (2003), which is factually analogous. In Tinoco, a vessel was intercepted in international waters, flew no flag, contained no registration documentation or identifying markings, and Colombian officials were unable to confirm its registration. See id. at 1092-94. This Court concluded that the vessel in Tinoco comported with the "vessel without nationality" under § 1903(c)(2)(C), and, consequently, was stateless. See id. at 1116. "Because stateless vessels do not fall within the veil of another sovereign's territorial protection, all nations can treat them as their own territory and subject them to their laws." United States v. Caicedo, 47 F.3d 370, 373 (9th Cir. 1995).

Significantly, "[s]ection 1903(c)(1)(A) states that 'a vessel without nationality' is included within the definition of a vessel subject to the jurisdiction of the United States." Tinoco, 304 F.3d at 1112 (quoting 46 U.S.C. app. § 1903(c)(1)(A)). Additionally, "we noted that Congress, under the 'protective principle' of international law, may assert extraterritorial jurisdiction over vessels in the high seas that are engaged in conduct that 'has a potentially adverse effect

8

and is generally recognized as a crime by nations that have reasonably developed legal systems.'"[2] Id. at 1108 (quoting United States v. Gonzalez, 776 F.2d 931, 939 (11th Cir. 1985)). Further, this circuit and other circuits have not embellished the MDLEA with a nexus requirement. See, e.g., United States v. Mena, 863 F.2d 1522, 1527 (11th Cir. 1989) (rejecting facial challenge to MDLEA based on a lack of a "meaningful relationship" to the United States); United States v. Stuart-Caballero, 686 F.2d 890, 891 (11th Cir. 1982) (per curiam) (rejecting facial challenge to predecessor statute for lack of nexus requirement and collecting cases); United States v. Suerte, 291 F.3d 366, 375 (5th Cir. 2002) (determining that "to the extent the Due Process Clause may constrain the MDLEA's extraterritorial reach, that clause does not impose a nexus requirement"); United States v. Perez-Oviedo, 281 F.3d 400, 402-03 (3d Cir. 2002) (recognizing that other courts of appeal "have held that no nexus is needed between a defendant's criminal conduct and the United States in order for there to be jurisdiction, even when the vessel at issue is registered in a foreign country (as opposed to being stateless)" and collecting cases); United States v. Cardales, 168 F.3d 548, 553 (1st Cir. 1999) (holding "that due process does not require the government to prove a

---

[2]Congress enacted the MDLEA because drug trafficking aboard vessels (1) "is a serious international problem and is universally condemned," and (2) "presents a specific threat to the security and societal well-being of the United States." 46 U.S.C. app. § 1902.

nexus between a defendant's criminal conduct and the United States in a prosecution under the MDLEA when the flag nation has consented to the application of United States law to the defendants").[3]

Rendon also argues that venue in the Middle District of Florida was improper because his offense was not committed in that district.[4] When a crime over which a federal court has jurisdiction is not committed within any state, the Constitution directs that the defendant shall be tried "at such Place or Places as the Congress may by Law have directed." U.S. CONST. art. III, § 2, cl. 3. Section 1903 provides that a defendant charged with a violation of that section shall be tried in the United States district court "at the point of entry where that person

___

[3]Rendon's argument that his prosecution was unconstitutional because the government did not allege or prove that he was within United States Customs territory when he was apprehended is invalid. A person who commits an offense under § 1903 is punished according to the penalties set forth in 21 U.S.C. § 960. 46 U.S.C. app. § 1903(g)(1). Under § 960, "[a]ny person who . . . knowingly or intentionally brings or possesses on board a vessel, aircraft, or vehicle a controlled substance," as prohibited by § 955, shall be punished according to § 960(b). 21 U.S.C. § 960(a)(2). Section 955 provides that it is "unlawful for any person to bring or possess on board any vessel or aircraft, or on board any vehicle of a carrier, arriving in or departing from the United States or the customs territory of the United States, a controlled substance." 21 U.S.C. § 955. Whether Rendon was within the customs territory of the United States is irrelevant to his prosecution. "Customs territory" presence is an element of a § 955 crime, but it is not an element of a § 1903 offense, the statute under which Rendon was charged. Section 960 solely establishes penalties for various drug trafficking crimes and does not transform a § 1903 violation into a § 955 violation. 21 U.S.C. § 960. Because the government was not required to allege customs territory as an element of his § 1903 crime, Rendon's prosecution was not unconstitutional.

[4]Section 1903(f) provides that "[a]ny person who violates this section shall be tried in the United States district court at the point of entry where that person enters the United States." 46 U.S.C. app. § 1903(f).

10

enters the United States," or in the federal district court for the District of Columbia. 46 U.S.C. app. § 1903(f). Venue was proper in the Middle District of Florida because it is uncontested that Rendon's entry into the United States occurred within that district.

Further, Rendon also ignores that, by enacting § 1903(f), Congress exercised its established authority "to regulate drug-related activities on the high seas." Tinoco, 304 F.3d at 1110 n.21. A federal district court has personal jurisdiction to try any defendant brought before it on a federal indictment charging a violation of federal law. See United States v. Alvarez-Machain, 504 U.S. 655, 659-70, 112 S. Ct. 2188, 2191-97 (1992); United States v. Noriega, 117 F.3d 1206, 1213-14 (11th Cir. 1997); United States v. Darby, 744 F.2d 1508, 1530-31 (11th Cir. 1984). Consequently, the district court's exercise of personal jurisdiction over Rendon initially to try him for violation of the MDLEA and, subsequently, to sentence him following his plea did not violate due process.[5] See

---

[5]We further note that, when a defendant fails to object to venue before trial, he waives this objection. United States v. Roberts, 308 F.3d 1147, 1151-52 (11th Cir. 2002) (per curiam), cert. denied, __ U.S.__, 123 S. Ct. 2232 (2003). A limited exception to this waiver rule applies when the defendant was unaware that the indictment alleged an incorrect venue until the prosecution presented its case at trial. United States v. Dabbs, 134 F.3d 1071, 1078 n.8 (11th Cir. 1998). In such circumstances, the defendant may properly object to venue at the close of the evidence. Id. The Dabbs exception is inapplicable because (1) this case did not go to trial, and (2) there is no evidence that Rendon was unaware of any venue defect in the indictment before he pled guilty. Because Rendon first objected to venue in his objections to his Presentence Investigation Report, after he had entered his guilty plea, he waived his venue challenge.

11

United States v. Gonzalez, 776 F.2d 931, 938-41 (11th Cir. 1985) (concluding that there was no due process violation when predecessor statute provided clear notice that drug trafficking aboard vessels was prohibited and conduct prohibited was condemned by all nations).

Relying on the Supreme Court's decision in United States v. Gaudin, 515 U.S. 506, 115 S. Ct. 2310 (1995), Rendon also argues that the district judge's deciding subject matter jurisdiction as a preliminary question of law deprived him of his Fifth and Sixth Amendment rights to have a jury determine him guilty beyond a reasonable doubt of every element of the crimes charged. It is precisely the statutory language that removes the issue of jurisdictional determination from being an element of the offense for the jury to decide: "All jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. app. § 1903(f). "By adding to the MDLEA the jurisdiction and venue provision, 46 U.S.C. app. § 1903(f), Congress . . . plainly indicated that whether a vessel is subject to the jurisdiction of the United States is not an element of the offense, but instead is solely an issue of subject matter jurisdiction that should be treated as a preliminary question of law for the court's determination." Tinoco, 304 F.3d at 1105. Based upon Ford v. United States, 273 U.S. 593, 47 S. Ct. 531 (1927), we recognized:

[S]tatutory jurisdictional requirements like the one in the MDLEA do not fit into the traditional definition of what constitute offense elements. Hence, the § 1903 jurisdictional requirement is not an essential ingredient or an essential element of the MDLEA substantive offense, and, as a result, it does not have to be submitted to the jury for proof beyond a reasonable doubt.

Tinoco, 304 F.3d at 1109-10. Furthermore, we specifically distinguished the applicability of Gaudin in the MDLEA context:

Gaudin never stated that all factual determinations must go [to] the jury. Rather, Gaudin stands for the proposition that elements of an offense that involve factual determinations, or mixed determinations of law and fact, must go to the jury. If the factual determination has no bearing on an element of the offense, the principles laid down in Gaudin do not apply. . . . Hence, although fact-bound determinations may be involved, that does not automatically mean that the 46 U.S.C. app. § 1903 jurisdictional issue has to be decided by the jury. . . . [T]he jurisdictional requirement goes only to the court's subject matter jurisdiction and does not have to be treated as an element of a MDLEA substantive offense.

. . . .

In sum, we reject the appellants' argument that the MDLEA, 46 U.S.C. app. § 1903(f), is unconstitutional under Gaudin and other related cases. Although the Due Process Clause and the Sixth Amendment right to a jury trial require that each element of a criminal offense be submitted to the jury for proof beyond a reasonable doubt, Congress made clear through the 1996 amendment to the MDLEA that the jurisdictional requirement is not an element of a § 1903(a) substantive offense, but rather is an issue that goes only to the subject matter jurisdiction of the federal courts. We also have concluded that Congress had the flexibility under the Constitution, at least with respect to the statutory jurisdictional requirement at issue in this case, to decide that the jurisdictional issue should be solely one of subject matter jurisdiction for the court to decide, and not an element of the MDLEA substantive offense. This is because the

13

> jurisdictional provision here is not a traditional element, or otherwise an essential ingredient of a criminal offense.

Id. at 1110-12 (citations and footnote omitted).

Rendon's drug trafficking activities are within the ambit of the grant of exterritorial jurisdiction provided by the MDLEA. Because the United States intercepted the go-fast boat in international waters, the boat flew no flag, contained no identification markings or registration documents, and Colombian officials were unable to confirm Rendon's assertion of Colombian registry, the boat was "without nationality" under § 1903(c)(2)(C) and, therefore, was "'subject to the jurisdiction of the United States.'" 46 U.S.C. app. § 1903(c)(1)(A). Because Rendon's entry into the United States was Jacksonville, Florida, pursuant to § 1903(f), venue was proper in the Middle District of Florida. Rendon's argument that subject matter jurisdiction is an element of the charged crimes, and, consequently under Gaudin, to be decided by a jury is foreclosed by Tinoco, where we decided that § 1903(f) does not violate a defendant's Fifth and Sixth Amendment rights. Accordingly, Rendon's arguments relating to subject matter jurisdiction are without merit.

B. Application of Apprendi to MDLEA Sentencing

Rendon alleges that, because the MDLEA incorporates the penalties framework of 21 U.S.C. § 960, it violates Apprendi by increasing his sentence by facts determined by the trial judge by a preponderance of the evidence rather than by the jury beyond a reasonable doubt. The Tinoco appellants also contended that the MDLEA was unconstitutional because it incorporates the penalties of 21 U.S.C. § 960(b), which they argued violated the Fifth and Sixth Amendments and thereby violated Apprendi. Tinoco, 304 F.3d at 1098. As recognized in Tinoco, Apprendi held that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" Id. (quoting Apprendi, 530 U.S. at 490, 120 S. Ct. at 2362-63) (alteration in original). In Tinoco, this Court further explained that "Apprendi does not apply when the defendant's sentence falls into that statutory penalty range, meaning that there is no need to have drug quantity charged in the indictment, submitted to the jury, or proven beyond a reasonable doubt in that context." Tinoco, 304 F.3d at 1100.

> There is constitutional error under Apprendi . . . in the 21 U.S.C.
> § 960 context only if the sentencing judge's factual finding actually
> increased the defendant's sentence above the statutory maximum
> found in § 960(b)(3), and only if the fact that led to the enhanced
> sentence was not charged in the federal indictment or submitted to the
> jury for proof beyond a reasonable doubt.

15

Id. at 1101. Because Rendon's sentence was exactly the statutory mandatory minimum and not above the statutory maximum, Apprendi is irrelevant. Id. at 1101. Therefore, Rendon's Apprendi argument relating to his sentencing was resolved by Tinoco and is unavailing.

C. Dual Sentencing Enhancements as Captain and Organizer or Leader

At sentencing, over Rendon's objections, the district judge adjusted Rendon's sentence upward by imposing a two-level increase for being a captain of the go-fast boat under United States Sentencing Guidelines § 2D1.1(b)(2)(B) (Nov. 2001) and a four-level increase under U.S.S.G. § 3B1.1(a) as an organizer or leader. Rendon challenges the applicability of each enhancement individually, and alternatively, contends that these separate enhancements are for the same conduct and, therefore, constitute impermissible double counting. We review a district court's findings of fact for clear error and its application of the Sentencing Guidelines de novo. United States v. Jackson, 276 F.3d 1231, 1233 (11th Cir. 2001).

1. Captain Enhancement

Rendon contends that he was not a "captain" within the meaning of § 2D1.1(b)(2)(B) because the go-fast vessel was nothing more than a speedboat, and the term "captain" refers to an individual listed on a ship's manifest as the

16

captain.  Because he was only the person in charge of a small boat, he argues that the adjustment does not apply to him.  Rendon, however, cites no authority supporting his definition of "captain."

The circuits that have decisions on point have declined to adopt a rigid definition of the term captain.  See, e.g., United States v. Senn, 129 F.3d 886, 896-97 (7th Cir. 1997) (concluding that a defendant need only "act as" a captain to warrant sentence enhancement under § 2D1.1(b)(2)(B) and that no particular training or licensure is required to justify the designation); United States v. Guerrero, 114 F.3d 332, 346 (1st Cir. 1997) (rejecting defendant's assertion that § 2D1.1(b)(2)(B) applies only to offense participants possessing "special navigational rank or skills").  In this case, Rendon identified himself as the captain to boarding Coast Guard personnel.  Additionally, Rendon's codefendants testified that they considered him to be the captain because he not only navigated the boat directly or indirectly and was the only crew member who knew its course, but also he had hired the crew and directed their operations on board.

At the sentencing hearing, the district judge described Rendon's navigation and use of the go-fast boat:

> True, this was a go-fast boat . . . and, true, the other one was a fishing boat, although it was a fishing boat not being used to fish, but being used to transport drugs, this was a fast boat being used to

17

transport drugs. In both cases[,] the principle was to transport drugs, not to use them . . . in a manner consistent with its most wholesome purpose for which it was intended.

. . . [S]omeone asked whether Mr. Castro, or . . . Mr. Pineda [Torres] . . . [thought that] Mr. Quintero Rendon behaved different than any other captain that he had been with on any other vessel. The answer to that question is revealing, is yes, he did, because instead of leading them to fish, he led them to a cocaine rendevous.

Therefore, the facts of this case evidence that Rendon was the captain in an employment, navigational, and operational sense. He has provided no authority for his technical definition of "captain," and we will not depart from the sound reasoning of other circuits by creating one.

Rendon also contends that, under § 2D1.1(b)(2),[6] a controlled substance must actually be "imported" for the upward adjustment to apply. He argues that because there was no actual importation into the United States and no evidence that the cocaine was destined to be delivered to the United States, the enhancement cannot be applied to him.

---

[6] This guideline provides:

If the defendant unlawfully imported or exported a controlled substance under circumstances in which (A) an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance, or (B) the defendant acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance, increase by **2** levels.

U.S.S.G. § 2D1.1(b)(2).

Section 2D1.1(b)(2)(B) imposes the enhancement based on the role of the defendant in the importation or exportation of a controlled substance: "the defendant acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance." U.S.S.G. § 2D1.1(b)(2)(B) (emphasis added). Rendon emphasizes that the introductory phrase of the guideline states, "[i]f the defendant unlawfully imported or exported a controlled substance," which is in the past tense and appears to apply to both subsections 2D1.1(b)(2)(A) and 2D1.1(b)(2)(B). U.S.S.G. § 2D1.1(b)(2). However, the general heading of § 2D1.1 provides that the adjustments in § 2D1.1 apply to not only substantive drug offenses, but also to attempt and conspiracy offenses. U.S.S.G. § 2D1.1. Further, addressing a similar situation concerning the application of § 2D1.1(b)(2)(B) where an appellant contended "that the enhancement would only have been appropriate if he had actually carried out the act of transporting drugs, but is not appropriate for mere conspiracy and attempt," the First Circuit concluded the appellant's argument was "frivolous." United States v. Rodriguez, 215 F.3d 110, 124 (1st Cir. 2000), cert. denied, 532 U.S. 996, 121 S. Ct. 1658 (2001). Using U.S.S.G. § 2X1.1(a), the First Circuit reasoned:

> The offense level for the crimes of conspiracy and attempt is "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct

19

that can be established with reasonable certainty."  USSG § 2X1.1(a) (Nov. 1998) (emphasis added).  The adjustment in § 2D1.1(b)(2)(B) plainly is to be applied to convictions for conspiracy and attempt, so long as the necessary factual predicate for the enhancement exists. . . . [Appellant's] argument is simply that the substantive crime was not committed.  It simply does not matter whether he actually carried the controlled substance; his conspiring and his attempt to do so warrant the application of the enhancement.

Id.  We adopt the reasoning of the First Circuit and conclude that when the factual predicate in § 2D1.1(b)(2)(B) is satisfied, the enhancement is appropriate.  In this case, there was sufficient evidence that Rendon was captain of a vessel carrying a controlled substance and that he conspired to unlawfully import a controlled substance.  It simply does not matter that his go-fast boat was stopped before the actual importation was completed.  Therefore, we conclude that the two-level captain enhancement under § 2D1.1(b)(2)(B) was applied appropriately in calculating Rendon's sentence.[7]  See Rodriguez, 215 F.3d at 124; United States v.

_____

[7] We distinguish this case from our decision in United States v. Chastain, 198 F.3d 1338 (11th Cir. 1999), cert. denied, 532 U.S. 996, 121 S. Ct. 1658 (2001).  Chastain concerned defendants convicted of conspiracy to import and possess marijuana with the intent to distribute.  Id. at 1343.  The government became aware of the conspiracy when a private airplane co-piloted by appellants Chastain and Beatty crashed at a Florida airport and aeronautical maps and charts for air travel between Jamaica and Florida were discovered as well as an illegal fuel transfer system, burlap bags, duct tape, a hand-held radio.  Id. at 1344.  Furthermore, all the passenger seats in the airplane had been removed.  Id.  Investigation revealed that one of the coconspirators in purchasing the plane had stated that the plane would be used "to haul drugs."  Id. at 1345.  This Court reversed the two-level enhancement under § 2D1.1(b)(2) and determined that, although the general heading or title of § 2D1.1 as to unlawful importing or exporting drugs includes "Attempt or Conspiracy," the language in § 2D1.1(b)(2)(A) --- "air carrier was used to import or export" --- clearly contemplated and meant a completed importation or exportation and not an incomplete attempt.  Id. at 1353.  In reversing the district court and remanding for

20

Guerrero, 114 F.3d 332, 345-46 (1st Cir. 1997) (applying 2-level enhancement in

§ 2D1.1(b)(2)(B) where defendant was pilot aboard a vessel carrying a controlled

substance on the high seas off Columbia, South America).

## 2. Organizer/Leader Enhancement

Rendon also argues that the four-level upward adjustment under U.S.S.G.

§ 3B1.1(a) for being an organizer or leader of the conspiracy was improper.[8]

Rendon contends that he did not negotiate the transaction, did not have decision-

making authority and did not exercise a high degree of participation.  Rather,

according to Rendon, he was merely a delivery man.  Furthermore, Rendon argues

resentencing, this Court specifically found that "the district court's reliance on the terms in the title as explanatory of the guideline is misplaced."  Id.

Chastain may be easily distinguished because it concerned § 2D1.1(b)(2)(A), which imposes the enhancement based on the actual use of an aircraft used to import a controlled substance and states: "an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance."  U.S.S.G. § 2D1.1(b)(2)(A) (emphasis added). The factual predicate in § 2D1.1(b)(2)A) was not met in Chastain because the defendant had not used the plane to import the controlled substance.  In contrast, § 2D1.1(b)(2)(B) imposes the enhancement based on the role of the defendant in the subject importation or exportation: "the defendant acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance."  U.S.S.G. § 2D1.1(b)(2)(B) (emphasis added).  Subsection 2D1.1(b)(2)(B) omits the phrase that was determinative in Chastain in subsection 2D1.1(b)(2)(A) of "was used to import or export."  As in Chastain, we need not use attempt or conspiracy from the general heading to support the factual predicate of acting as a captain aboard a vessel carrying a controlled substance in § 2D1.1(b)(2)(B).  Instead, we look to the conduct captured by the general heading of § 2D1.1, as well as § 2X1.1(a) for conspiracy crimes, only to construe the introductory phrase in § 2D1.1(b)(2).

[8]The organizer-or-leader enhancement for an aggravating role provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.  U.S.S.G. § 3B1.1(a).

that he did not exercise control over five individuals in the conspiracy as required by § 3B1.1(a). Finally, Rendon argues that if this Court determines that the district court improperly concluded that he was a leader or organizer of the conspiracy, he is entitled to an opportunity to qualify for safety-valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2.

A district court's enhancement of a defendant's offense level based on his role as an organizer or leader is a finding of fact reviewed for clear error. United States v. Phillips, 287 F.3d 1053, 1055 (11th Cir. 2002). The factors that a sentencing court considers in determining if this enhancement applies are: "(1) exercise of decision-making authority, (2) nature of participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the fruits of the crime, (5) degree of participation in planning or organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and authority exercised over others." United States v. Vallejo, 297 F.3d 1154, 1169 (11th Cir. 2002) (citing U.S.S.G. § 3B1.1, cmt. n.4), cert. denied, 537 U.S. 1096, 123 S. Ct. 694 (2002). The enhancement requires that the convicted defendant be a leader or organizer of criminal activity that involved "five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). "A 'participant' is a person who is criminally responsible for the commission of the offense, but need

22

not have been convicted." U.S.S.G. § 3B1.1, cmt. n.1. We have recognized that "[t]he defendant does not have to be the sole leader or kingpin of the conspiracy in order to be considered an organizer or leader within the meaning of the Guidelines" and that "'[b]ecause the district court must interpret the factors stated in the commentary, and must exercise its best judgment as to the application of the facts to these standards, its decision is entitled to one of deference on appeal.'" Vallejo, 297 F.3d at 1169 (citation omitted) (alteration in original); see United States v. Suarez, 313 F.3d 1287, 1294 (11th Cir. 2002) (§ 3B1.1(a) aggravating role adjustment warranted where defendant "had decision-making authority and exercised control"), cert. denied, __ U.S. __, 123 S. Ct. 1765 (2003).

The evidence in this case showed that: codefendants Castro and Torres testified that Rendon hired them for the trafficking trip; Castro testified that Rendon operated the go-fast boat until it met two other boats from which Rendon received the cocaine shipment; while Castro and Torres were operating the go-fast boat, Rendon instructed them where to go; Rendon was the only person who knew where the cocaine was to be delivered; and Rendon instructed Castro and Torres to throw the cocaine overboard when the Navy plane was spotted overhead. Regarding the number of people involved in the conspiracy, Castro testified that there were two people on each of the two boats from which Rendon acquired the

23

cocaine, and Rendon's crew consisted of himself and three coconspirators in his boat. Thus, there were at least eight people involved with the conspiracy over whom Rendon exercised leader and organizational control.

At the sentencing hearing, the district judge explained that the evidence supported the § 3B1.1(a) enhancement:

> [W]e can count more than five participants; again, not more than five defendants, but more than five participants. And in any event, even if we could not, when someone departs Colombia in a vessel with the objective of rendezvousing with another vessel with the objective of transporting a multi-million dollar quantity of contraband from one part of the world to another, that plot, precisely as is this plot, is certainly extensive.

Consequently, the district judge had the authority to impose a four-level enhancement because the conspiracy involved five or more participants as well as being part of an extensive, multi-million-dollar plot dealing in contraband. See U.S.S.G. § 3B1.1(a). Section 3B1.1(a) does not require that five people were convicted, or even charged, in connection with the conspiracy. See id. & cmt. n.1. It only requires that the conspiracy involved five or more "criminally responsible" people. U.S.S.G. § 3B1.1, cmt. n.1. Castro testified that two people each on two different boats loaded the cocaine onto Rendon's boat under his instruction and direction, and Rendon's crew consisted of him and his three codefendants. Based on the uncontroverted testimony, the district court's determination that Rendon

24

acted as "an organizer and leader within the meaning of 3B1.1(a)" was not clearly erroneous. It necessarily follows that he was not entitled to safety-valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, because this relief is not available to a convicted defendant who receives the organizer/leader enhancement. See 18 U.S.C. § 3553(f)(4); U.S.S.G. § 5C1.2(a)(4); United States v. Simpson, 228 F.3d 1294, 1304-05 (11th Cir. 2000).

3. Alleged Double Counting

Rendon argues that the district judge's imposing both the captain enhancement under § 2D1.1(b)(2)(B) and the organizer/leader enhancement under § 3B1.1(a) was improper double counting because it resulted in his being punished twice for the same conduct. We review contentions alleging impermissible double counting de novo. United States v. Matos-Rodriguez, 188 F.3d 1300, 1310 (11th Cir. 1999).

"'Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.'" Id. at 1309 (citation omitted). Double counting is permissible at sentencing (1) "'if the Sentencing Commission intended the result,'" and (2) "'if the result is permissible because each [guideline] section concerns conceptually

25

separate notions related [sic] to sentencing.'" Id. at 1310 (quoting United States v. Adeleke, 968 F.2d 1159, 1161 (11th Cir. 1992)).  This Court "presumes the Sentencing Commission intended to apply separate guideline sections cumulatively, unless specifically directed otherwise." Id. at 1310.

After hearing argument on adjusting Rendon's sentence upward for being both captain of the vessel and a leader or organizer, the district judge explained his reasoning for giving both enhancements:

> In this particular case it appears that Mr. Quintero Rendon had both the functional responsibilities of a captain within the meaning of 2D1.1(b)(2) and, based on his recruitment and other activities, was also an organizer and leader within the meaning of 3B1.1(a).
> . . . .
> . . . [I]n this particular case this individual qualifies, it seems, both as captain, for the specific offense characteristic of captain or any other operational officer, and then based on a separate set of activities, that is his organizer and leadership role, qualifies under 3B1.1(a).
> . . . .
> He both did everything presumably that a captain would do and then did something else.  He did those things that the leader/organizer of an extensive criminal conspiracy would do.  So he qualified on both hands.  I found that—the question and the answer to be fairly graphic for the reason that this defendant qualifies here.

In this case, neither of the two sentencing factors is a subset of the other.  A defendant may captain a craft or vessel without serving as an organizer or leader in the overall conspiracy.  See Guerrero, 114 F.3d at 346 (recognizing the

26

§ 2D1.1(b)(2)(B) enhancement does not require evidence of leadership). Likewise, a defendant may be an organizer or leader of a drug conspiracy without having anything to do with the actual operation of the vessel used to transport the drugs. "Absent an instruction to the contrary, the adjustments from different guideline sections are applied cumulatively (added together)." U.S.S.G. § 1B1.1, cmt. n.4; United States v. Naves, 252 F.3d 1166, 1168 (11th Cir. 2001) ("Absent a specific direction to the contrary, we presume that the Sentencing Commission intended to apply separate guideline sections cumulatively."); Jackson, 276 F.3d at 1236. Neither of the challenged guidelines includes any language or commentary that suggests that they may not be applied cumulatively. To the contrary, the two enhancements embody "conceptually separate notions relating to sentencing" because they are designed for two different purposes. Jackson, 276 F.3d at 1235 (internal quotation omitted).

Section 3B1.1 requires the court to enhance a defendant's sentence based on his relative culpability within a criminal organization. See U.S.S.G. § 3B1.1, cmt. background ("The Commission's intent is that this adjustment should increase with both the size of the organization and the degree of the defendant's responsibility."). In contrast, § 2D1.1(b)(2)(B) addresses those who facilitate a drug smuggling operation by filling a critical position without which the operation

27

likely would fail. See Guerrero, 114 F.3d at 346 ("While the guideline may speak to a defendant's control over some mechanical aspect of a vessel's operation, it does not address the defendant's authority over other individuals involved in a criminal venture."). Under these circumstances, the district court did not err in concluding that Rendon qualified for enhancements under both § 2D1.1(b)(2)(B) and § 3B1.1(a), which are not mutually exclusive enhancements under the Sentencing Guidelines.

### III. CONCLUSION

In this appeal, Rendon has challenged the MDLEA as to subject matter jurisdiction as well as an Apprendi violation by incorporating the penalty provisions of 21 U.S.C. § 960. He also contends that the district court erred in giving him upward adjustments for being the captain of the subject go-fast boat as well as being an organizer or leader of the drug conspiracy. As we have explained, Rendon appropriately was tried in the Middle District of Florida, and there is no Apprendi violation with respect to his sentence. Because the testimony in this case reveals that Rendon was both the captain of the go-fast boat carrying a controlled substance as well as an organizer and leader of the drug conspiracy, the district judge correctly gave him upward adjustments in his sentence under §

2D1.1(b)(2)(B) and § 3B1.1(a).  Accordingly, Rendon's conviction by guilty plea

and his sentence are affirmed.

**AFFIRMED.**