[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 18, 2006
THOMAS K. KAHN
CLERK

No. 05-14533
Non-Argument Calendar

_____

D. C. Docket No. 04-00521-CR-T-23MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILBUR HENRY MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 18, 2006)**

Before ANDERSON, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

The United States Coast Guard apprehended Wilbur Henry Martinez and four other men aboard a "go-fast" vessel traveling in international waters off the coast of Colombia. The Coast Guard recovered approximately 1682 kilograms of cocaine that Martinez and the other men had thrown overboard prior to being apprehended. After a jury trial, Martinez was convicted of conspiracy to possess and possession with intent to distribute five or more kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 21 U.S.C. § 960(b)(1)(B)(ii) and 46 U.S.C. app. § 1903(a), (g), and (j). He was sentenced to 188 months' incarceration. We affirm his convictions and sentence.

Martinez makes two arguments warranting discussion. First, he argues the district court erred by allowing the Government to establish jurisdiction under § 1903(a) through inadmissible hearsay. Second, he argues the district court erred by denying him a minor role reduction under U.S.S.G. § 3B1.2(b).[1]

---

[1]Martinez's remaining arguments are foreclosed by prior precedent. He argues § 1903, the Maritime Drug Law Enforcement Act (MDLEA), is an ultra vires exercise of congressional power under the Piracies and Felonies Clause of the United States Constitution, U.S. Const., art. I, § 9, cl. 10. This argument is foreclosed by our decision in *United States v. Estupinan*, 453 F.3d 1336, 1338-39 (11th Cir. 2006) (holding Congress did not exceed its authority in enacting the MDLEA). Insofar as he argues the MDLEA is unconstitutional because it removes the element of jurisdiction from the jury's consideration, that argument is foreclosed by our decision in *United States v. Tinoco*, 304 F.3d 1088, 1107-12 (11th Cir. 2002) (rejecting this argument because "the jurisdictional provision here is not a traditional element, or otherwise an essential ingredient, of a criminal offense"). He also argues the MDLEA violates due process because (1) § 1903(a) does not require a nexus between the criminal conduct and the United States, (2) § 1903(f) allows for forum shopping because it sets venue at the point of entry into the United States, and (3) the provision in § 1903(d) precluding defenses based on international law violates his liberty interest in ensuring that he not be prosecuted in a jurisdiction bearing no ties to his offense. These arguments are foreclosed by *United States v.*

Section 1903(a) provides, in pertinent part, "[i]t is unlawful for any person . . . on board a vessel subject to the jurisdiction of the United States . . . to possess with intent to . . . distribute . . . a controlled substance." *Id.* § 1903(a). Section 1903(c)(1)(A), in turn, states that a "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality." *Id.* § 1903(c)(1)(A). A "vessel without nationality" is defined in § 1903(c)(2) as including:

> (B) any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and

> (C) a vessel aboard which the master or person in charge makes a claim of registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

*Id.* § 1903(c)(2)(B), (C). Section 1903(c)(3) states that a claim of nationality or registry "only includes" the production of documents evidencing the vessel's nationality in accordance with the 1958 Convention on the High Seas, flying the flag nation's ensign or flag, or "a verbal claim of nationality or registry by the master or person in charge of the vessel." *Id.* § 1903(c)(3). Section 1903(f) provides that "[a]ll jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." *Id.* § 1903(f).

_____

*Rendon*, 354 F.3d 1320, 1325-26 (11th Cir. 2003) (holding a nexus to the United States is not required and noting the venue provision comports with U.S. Const., art. III, § 2, cl. 3).

3

We review for clear error the district court's factual findings concerning whether a vessel is a "vessel without nationality" and thus a "vessel subject to the jurisdiction of the United States." *United States v. Tinoco*, 304 F.3d 1088, 1114 (11th Cir. 2002). We review de novo a "district court's interpretation and application of statutory provisions that go to whether the court has subject matter jurisdiction." *Id.* (internal quotations omitted).

Martinez argues the district court erred by allowing the Government to establish that the go-fast vessel was a "vessel without nationality" as defined in § 1903(c)(2)(C) through the admission of a document in which the Colombian government stated, in response to the Coast Guard's request, that it could neither confirm nor deny the vessel was registered in Colombia. He asserts the document was inadmissible hearsay and the district court erred in relying on it for its jurisdiction determination. We need not decide whether the document was inadmissible hearsay or whether the district court's jurisdictional inquiry is confined to admissible evidence because jurisdiction was established under § 1903(c)(2)(B) without resort to the Colombian government's response.

The district court did not clearly err in finding the jurisdictional requirement met in this case. The evidence at trial showed that the go-fast vessel flew no flag and had no name, registration number, home port, or other indicia of nationality on

4

it. There is no indication in the record that the crew possessed or produced documentation evidencing the vessel's nationality. When questioned, the crew made no claims about the vessel's nationality or registration. Each man denied being the captain or master of the vessel, and the captain concealed his identity until coming ashore in Tampa. The facts of this case are materially indistinguishable from those of *United States v. De La Cruz*, 443 F.3d 830, 832 (11th Cir. 2006). In *De La Cruz*, we affirmed the district court's finding of jurisdiction under § 1903(a) where the vessel flew no flag, had no markings indicating nationality, the crew made no claims about the vessel's nationality, and the captain concealed himself and failed to identify the vessel's nationality. In this case, the captain's failure to identify himself and the nationality of the vessel means that it was "a vessel without nationality" as defined in § 1903(c)(2)(B). As such, it was subject to the jurisdiction of the United States. The district court, therefore, did not need to rely on the definition of a stateless ship in § 1903(c)(2)(C) or the document evidencing the Colombian government's failure to confirm or deny the vessel's nationality.

Martinez contends Lieutenant Kathryn Wunderlich's testimony establishes that a claim of Colombian nationality was made, and that, consequently, the district court could not rely on § 1903(c)(2)(B). Wunderlich testified that once the men

5

were on board the Coast Guard cutter, "a claim of nationality was made," which prompted her to request that the Colombian government confirm or deny the vessel's nationality. He asserts that because a claim of Colombian nationality was made, the Colombian government's response was necessary to establish jurisdiction under the definition of a stateless vessel in § 1903(c)(2)(C).

The plain language of §1903(c)(2)(C) and (c)(3)(C) states that the claim of nationality or registry of the vessel must be made by the "master or person in charge" of the vessel. When the Coast Guard boarded the go-fast vessel, each man denied being the captain. At trial, the captain testified that he hid among his crew and did not identify himself as the master of the vessel until he came ashore in Tampa. This means the claim of nationality of the vessel Wunderlich testified to could not have been made by the master or person in charge of the vessel. Therefore, the requirement in § 1903(c)(2)(C) that the claimed nation of registry be contacted was never triggered and the vessel was correctly deemed "a vessel without nationality" under § 1903(c)(2)(B).

Martinez next argues that the district court clearly erred in failing to grant him a minor role reduction because the court relied, in large part, on the fact that he was hired to transport 1,950 kilograms of cocaine, and because he was only a courier in a multi-tiered drug enterprise.

6

We review for clear error the district court's findings regarding whether a defendant qualifies for a minor-role adjustment under the Guidelines. *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The defendant has the burden of establishing his minor role by a preponderance of evidence. *Id.* at 939. The district court conducts a two-pronged analysis to determine if the defendant warrants a minor role adjustment under U.S.S.G. § 3B1.2. *Id.* at 941, 944. "First, the district court must assess whether the defendant is a minor or minimal participant in relation in relation to the relevant conduct attributed to the defendant in calculating [his] base offense level." *Id.* at 941. We have held that "the amount of drugs imported is a material consideration in assessing a defendant's role in [his] relevant conduct." *Id.* at 943. The amount of drugs can be dispositive of this issue in the extreme case. *Id.* Only if the first prong is met does the district court reach the second prong, which requires the district court to assess a defendant's relative culpability vis-a-vis that of any other participants. *Id.* at 944. A court cannot look to any wider conspiracies, and it must limit its inquiry to those who were involved in the relevant conduct attributed to the defendant. *Id.*

The district court did not clearly err in denying Martinez a minor role reduction because Martinez did not show that his participation in the conspiracy to

7

smuggle 1,950 kilograms of cocaine on the go-fast vessel was minor, or that he was less culpable than the similarly situated crew members on the vessel. Evidence introduced at trial shows (1) Martinez was hired to steer the vessel and did steel the vessel; (2) Martinez, along with the other crew members, threw cocaine overboard when they heard a helicopter approaching; and (3) although Martinez received less compensation than the captain, he received more than at least one of his crew mates.

AFFIRMED.