[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 30, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15707
Non-Argument Calendar

_____

D. C. Docket No. 07-20292-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANA MARIA PEREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 30, 2008)**

Before MARCUS, WILSON and FAY, Circuit Judges.

PER CURIAM:

Ana Maria Perez appeals the 46-month sentence imposed after she pled guilty to one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349; and three counts of soliciting and receiving kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1).  Perez argues that the district court clearly erred in applying a four-level leadership-role enhancement, pursuant to U.S.S.G. § 3B1.1(a).  For the reasons discussed below, we affirm

## I.

The Centers for Medicare and Medicaid Services ran a medical insurance program that covered durable medical equipment ("DME"), such as prosthetic limbs, braces, wheelchairs, aerosol medications, and oxygen concentrators.  Under this program, DME suppliers could seek reimbursement from the government for the cost of DME items provided to Medicare patients.  Generally, a doctor would prescribe use of a certain DME item by a patient.  If the patient was a Medicare beneficiary, the government would pay a substantial portion of the cost of the DME item.  The patient would assign the right of payment of this reimbursement to the DME supplier.  The DME supplier then would submit a claim to the government, including the Medicare beneficiary's name and Medicare identification number, the prescribing doctor's name and Medicare identification

number, the name and Medicare billing number of the DME item prescribed by the doctor and provided by the DME supplier, and the date on which the DME item was provided by the DME supplier.

Perez owned a DME-supply company. Through this company, Perez sought to defraud the Medicare program with regard to aerosol medications. Specifically, she established a relationship with co-conspirators Henry and Karla Gonzalez, who owned two pharmacies. Henry Gonzalez gave Perez a list of aerosol medications that could be "billed" to the Medicare program for reimbursement. Perez recruited doctors to fraudulently prescribe these aerosol medications and more than 25 Medicare beneficiaries to pretend to need these aerosol medications. Perez generally would pay the Medicare beneficiaries approximately $150 per month for use of their names and Medicare identification numbers. Henry and Karla Gonzalez then would submit claims for these fraudulent prescriptions to the Medicare program. They would give Perez a kickback of 50% of the reimbursement money they received for each fraudulent claim from the government. The pharmacies owned by Henry and Karla Gonzalez ultimately received a total of $204,763 in reimbursements from the government for prescriptions arranged by Perez, and Perez ultimately received a total of $102,381 in kickbacks from Henry and Karla Gonzalez.

3

Henry and Karla Gonzalez also "worked with" several other DME suppliers. The pharmacies that they owned ultimately received a total of approximately $14 million in reimbursements from the government for prescriptions arranged by all of these DME suppliers. Perez was aware of these other relationships, as she signed a "log" that included their names when retrieving her kickback payments from Henry and Karla Gonzalez.

Perez also sought to defraud the Medicare program with regard to respiratory equipment, namely oxygen concentrators. Specifically, she recruited doctors to fraudulently prescribe the use of respiratory equipment and Medicare beneficiaries to pretend to need the respiratory equipment. She then would submit claims for these fraudulent prescriptions to the Medicare program. The DME-supply company owned by Perez ultimately received a total of $218,378.96 in reimbursements from the government.

Before Perez's sentencing, a probation officer prepared a presentence investigation report. Therein, the probation officer recommended, inter alia, that Perez receive a four-level leadership-role enhancement, pursuant to § 3B1.1(a), because she was an organizer or leader of a criminal activity involving five or more participants. The probation officer noted that Henry Gonzalez received a four-level leadership-role enhancement, and Karla Gonzalez received a three-level

4

managerial-role enhancement.

At sentencing, Perez objected to receiving a leadership-role enhancement, arguing that a three-level managerial-role enhancement would be more appropriate. She asserted that Henry and Karla Gonzalez were the organizers of the conspiracy. She asserted that she did not "control" the Medicare beneficiaries, as they were willing participants and were free to work with another DME supplier, and did not recruit necessarily all of the Medicare beneficiaries involved, as many of them likely "recruited" each other. The district court overruled Perez's leadership-role objection. The district court reasoned that Perez recruited many Medicare beneficiaries into the aerosol-fraud portion of the conspiracy and organized and ran the respiratory-equipment-fraud portion of the conspiracy entirely on her own.

## II.

We review a district court's application of a leadership-role enhancement for clear error. United States v. Rendon, 354 F.3d 1320, 1331 (11th Cir. 2003). Pursuant to § 3B1.1(a), a district court can increase a defendant's base offense level by four "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Pursuant to the commentary to § 3B1.1(a), the factors the district court should consider in determining whether a defendant held a leadership role in a conspiracy include "the

5

exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n. 4). Also, pursuant to the commentary, there can be more than one leader or organizer in a conspiracy. Id. Likewise, we have held that "[t]he defendant does not have to be the sole leader or kingpin of the conspiracy in order to be considered an organizer or leader within the meaning of the Guidelines." Rendon, 354 F.3d at 1332.

### III.

The district court did not clearly err in applying a leadership-role enhancement. See Rendon, 354 F.3d at 1331. With regard to the conspiracy involving aerosol-medication claims submitted by Henry and Karla Gonzalez, the record demonstrates that Perez's participation within the conspiracy was integral, as she provided the doctors and Medicare beneficiaries willing to participate. The scheme would not have worked absent her contribution. Also, the record demonstrates that Perez claimed a larger share of the fruits of the crime than many of its participants, namely the Medicare beneficiaries involved. Indeed, Perez

6

claimed an equal share of the profits as the player she admits was an organizer, or Karla Gonzalez.[1]

Pursuant to the commentary to § 3B1.1, these characteristics of Perez's role are consistent with a leadership-role enhancement. See U.S.S.G. § 3B1.1, comment. (n. 4). With regard to this conspiracy involving respiratory-equipment claims submitted by Perez herself, the record demonstrates that Perez recruited the doctors and Medicare beneficiaries, claimed the largest share of the profits, and planned and organized the offense. Pursuant to the commentary to § 3B1.1, these characteristics of Perez's role are consistent with a leadership-role enhancement. See U.S.S.G. § 3B1.1, comment. (n. 4). The fact that Henry Gonzalez also played a leadership role does not affect this conclusion. See Rendon, 354 F.3d at 1332. Thus, the district court did not clearly err in applying the leadership-role enhancement. See id. at 1331.

**AFFIRMED.**

---

[1] Perez claims that she received far fewer fruits of the crime than Henry and Karla Gonzalez because she was obligated to share her 50% with the Medicare beneficiaries. However, the government pointed out at sentencing that Henry and Karla Gonzalez also had costs associated with maintaining their pharmacies. We also note that Henry and Karla Gonzalez received 50% of the reimbursed money as a couple, while Perez received 50% alone.