[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10032
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cr-20221-PAS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIA HAYDEE LUZULA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 1, 2016)

Before HULL, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Maria Haydee Luzula appeals her sentence of 165 months of imprisonment

following her pleas of guilty to one count of conspiring to commit mail and wire

fraud, 18 U.S.C. § 1349, nine counts of mail fraud, *id.* § 1341, fifteen counts of wire fraud, *id.* § 1343, and two counts of attempted extortion, *id.* § 1951(a).  On appeal, Luzula challenges the enhancement of her sentence for an amount of loss between $1 and $2 million and for her role as a leader of the conspiracy. We affirm.

Luzula and her son used their businesses in Miami, Florida, and Lima, Peru, to defraud residents of the United States who spoke Spanish. Luzula and her son obtained customer lists from companies who had sold products to the victims and directed employees in telephone call centers owned by Luzula's son in Peru to contact the victims and to falsely represent that they were agents in a legal department of a private or government organization who were collecting overdue payments for products the victims had purportedly purchased. Luzula and her son interacted telephonically with the employees as they demanded payment for the fabricated orders. After victims agreed to pay bogus "fees" to settle the matter, their calls were routed to Miami where Luzula and her employees processed the payments and mailed packages containing the products the victims allegedly had ordered. Investigators examined Luzula's computer database system and discovered that, between October 2012 and January 2014, she swindled $2,153,506.16 from 8,477 victims that, after accounting for refunds, resulted in net

proceeds of $1,739,964.44. Luzula sent $828,531 to her son in Peru, and she used the remainder to purchase a house in Miami.

The district court did not clearly err in calculating the amount of loss attributable to Luzula. A defendant is subject to a 16-level increase of her base offense level when her offense results in an actual or intended loss between $1 and $2 million, United States Sentencing Guidelines Manual § 2B1.1(b)(1)(H) & cmt. n.3(A) (Nov. 2014), and the government provided reliable and specific evidence that Luzula's fraud caused a loss within that range, *United States v. Bradley*, 644 F.3d 1213, 1290 (11th Cir. 2011). Luke Shoemaker, a paralegal with the Department of Justice, provided a declaration that 88 to 94 percent of the victims "paid money in response to threatening calls." Shoemaker screened recordings of the calls, and he identified 162,000 telephone calls from the Peru office involving conversations lasting at least one minute and a smaller subset of calls in which the victims were threatened. Shoemaker used a random number formula to select 63 of the 8,477 victims who paid the Miami office, excluded six victims who did not pay between October 2012 and January 2014 or whose conversation he could not locate, and listened to the corresponding calls to verify that 53 of the remaining 56 victims paid under threat of incurring penalties or a lawsuit. Luzula argues that Shoemaker should have taken a larger sample from all the recordings, but any calls not resulting in payments were irrelevant to calculating the percentage of

3

payments. Luzula also argues that the computation was "sloppy and erroneous," but she fails to establish that Shoemaker's estimate was "so wildly inaccurate as to be unreasonable," *id.* at 1292. Luzula contends that a significant percentage of the calls involved legitimate sales, but the district court was entitled to rely on trial testimony from Luzula's former assistant, Pia Silva, that, in December 2012, the Peru office operated exclusively as a fraudulent collections agency and, in 2013, the Miami office processed payments only for fraudulent transactions. The district court made a reasonable, conservative estimate that Luzula obtained 88 percent of her net proceeds, or about $1.5 million, through fraud and intimidation. *See United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011).

The district court also did not clearly err when it enhanced Luzula's sentence for her role as a leader in planning and executing the scheme to defraud. *See* U.S.S.G. § 3B1.1(a). Luzula argues that childhood abuse rendered her unable to make rational decisions and caused her to be subservient to her son, but the evidence proved that she was autonomous, having practiced law in Peru, studied marketing, and started her own business in the United States. Luzula admitted in her factual proffer that she owned and operated the payment and package processing center in Miami and that she "directly and indirectly exercised control over the phone rooms in Peru," where employees "acting directly and indirectly under [her] and [her son's] direction, contacted the victims and falsely claimed that

4

they were calling from a 'legal department' . . . of a private entity [or] a state or city." Other evidence proved that Luzula acquired and paid for telephone and video communication and recording systems in Peru and Miami; purchased customer lists used to identify victims; prepared scripts and coached employees how to contact and coerce victims; hired, fired, and trained employees in Miami; determined what amount to demand from victims; oversaw the issuance of refunds; controlled bank accounts; and divided the proceeds of the fraud. *See id.* § 3B1.1 cmt. n.4. Although Luzula's son participated in some of the tasks and operated the Peru office, Luzula did not "have to be the sole leader or kingpin of the conspiracy in order to be considered an organizer or leader within the meaning of the Guidelines." *United States v. Rendon*, 354 F.3d 1320, 1332 (11th Cir. 2003) (quoting *United States v. Vallejo*, 297 F.3d 1154, 1169 (11th Cir. 2002)). The district court reasonably determined that Luzula was subject to a four-level increase of her base offense level under section 3B1.1(a).

We **AFFIRM** Luzula's sentence.

5