UNITED STATES of America,

v.

**Yimmi BELLAIZAC–HURTADO, et al., Defendants.**

**Case No. 10–20196–CR.**

United States District Court, S.D. Florida, Miami Division.

March 7, 2011.

Dustin M. Davis, United States Attorney's Office, Miami, FL, for the United States.

Stewart Glenn Abrams, Federal Public Defender's Office, Albert Zachary Levin, Albert Z. Levin, Philip Robert Horowitz, Philip R. Horowitz, Orlando do Campo, do Campo & Thornton, P.A., Miami, FL, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS INDICTMENT

JAMES LAWRENCE KING, District Judge.

**THIS CAUSE** comes before the Court upon the February 11, 2011 Report and Recommendation ("R & R") of Magistrate Judge Ted E. Bandstra (DE # 96), recommending that Defendants' Motion to Dismiss Indictment Based on Lack of Jurisdiction and Unconstitutionality of the Statute (DE # 61)[1] be denied. Defendants timely filed Objections to the Magistrate's Report and Recommendations on Defendants' Motion to Dismiss (DE # 99) on February 22, 2011, as well as a Supplemental Objection (DE # 106), filed February 25, 2011.[2] The Government filed a Response in Opposition to Defendants' Objections (DE # 107) February 27, 2011. Defendant Yimmi Bellaizac–Hurtado filed a Reply to the Government's Response in Opposition (DE # 111) March 1, 2011. The Court has thoroughly considered the R & R, the Defendants' Objections, the Government's Response, and Defendant's Reply. Defendants and the Government have submitted extensive briefings on the ob-

1. The Motion to Dismiss Indictment Based on Lack of Jurisdiction and Unconstitutionality of the Statute (DE # 61) was originally filed by Defendant Yimmi Bellaizac–Hurtado. (DE # 61). All three co-defendants moved to adopt/join in the Motion to Dismiss on the ground that the constitutional and jurisdictional issues raised in the Motion apply equally to them. Judge Bandstra granted those motions, and issued the R & R recommending

denial of the Motion to Dismiss as to all four defendants. (DE # 96 at 1 n. 1).

2. Both the original Objections and Supplemental Objection were filed by Defendant Yimmi Bellaizac–Hurtado. (DE # 99, DE # 106). Defendant Gonzalez–Valois joined in the initial Objections February 22, 2011. (DE # 100). Defendants Angulo–Rodallega and Riascos–Hurtado took the same action February 23, 2011. (DE # 103, 104).

jections to the R & R, and the Court considers those objections *de novo.* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). After a careful review of the record, the Court concludes that the R & R contains well-reasoned recommendations, and should be affirmed and adopted.

## I. Background

Defendants were indicted March 25, 2010, and charged with conspiracy to possess cocaine and possession of cocaine with intent to distribute, in violation of the Maritime Drug Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70502 et seq. (DE # 1). The statute prohibits the possession with intent to distribute a controlled substance on board "a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(a). The MDLEA defines a "vessel subject to the jurisdiction of the United States," in relevant part, to include: "a vessel without nationality; [and] a vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States." 46 U.S.C. § 70502(c)(1)(A) and (E). The R & R found that both these statutory jurisdictional prerequisites were met in this case. (DE # 96 at 4–5). Defendants objected, arguing that the MDLEA is unconstitutional as applied to this case because Congress has no authori-

ty to criminalize drug trafficking within the territorial waters of a foreign state. More specifically, Defendants argue that the R & R overlooked critical law on this issue. In addition, Defendants objected on the ground that the R & R impermissibly shifted the burden of disproving statelessness of the vessel onto Defendants.

## II. Discussion

### A. Constitutionality of the MDLEA

The R & R chiefly addresses Defendant's argument that the Maritime Drug Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70502 et seq., was enacted pursuant to the so-called "High Seas" clause of the United States Constitution, and is therefore unconstitutional as applied to this case. Article 1, section 8, clause 10 of the United States Constitution provides: "The Congress shall have Power ... [t]o define and punish Piracies and Felonies committed on the high seas, and Offenses against the Law of Nations." Defendants argue that because they were neither arrested on the high seas, nor indicted for conduct taking place on the high seas, Congress does not have authority to proscribe their conduct, and therefore, the MDLEA is unconstitutional as applied to them. The Government argued in response, and the R & R found, that the MDLEA is also grounded in the "Offenses against the Law of Nations" language in Article I, and is therefore constitutional. Although there is "no clear authority directly on point,"[3] Judge Bandstra recommended that the

---

**3.** There are a number of cases from this Circuit interpreting the constitutionality of the MDLEA. *See, e.g., United States v. Salcedo–Ibarra,* Case No. 8:07–CR–49–T–27TGW, 2009 WL 1953399 (M.D.Fla. July 6, 2009) (prosecution of conspirator never physically "on board" ship subject to United States jurisdiction constitutional); *United States v. Garcia,* 182 Fed.Appx. 873, 877 (11th Cir.2006) (criminalization of conduct on high seas without nexus to United States constitutional); *United*

*States v. Tinoco,* 304 F.3d 1088 (11th Cir. 2002) (MDLEA penalty provision constitutional). However, there is no case law on the specific issue presented here—whether Congress may "define and punish" drug trafficking in the territorial waters of another country as a domestic crime. *See* DE # 96 at 8. ("This truly appears to be a case of first impression involving the constitutionality of the MDLEA as applied in a 'territorial waters' context.").

MDLEA should not be found unconstitutional as applied to this case. (DE # 96 at 8–9). Defendants object to this finding on several grounds.

### 1. Section 70505 of the MDLEA

First, Defendants argue that "the R & R fails to recognize that Congress expressly divorced the MDLEA from reliance on the Law of Nations." (DE # 99). Defendants point to section 70505 of the MDLEA, which provides, in part:

> A person charged with violation section 70503 of this title ... does not have standing to raise a claim of failure to comply with international law as a basis for a defense.... A claim of failure to comply with international law in the enforcement of this chapter may be made only by a foreign nation. A failure to comply with international law does not divest a court of jurisdiction and is not a defense to a proceeding under this chapter.

46 U.S.C. § 70505.

The R & R does not address this provision. The Government did not respond to the arguments in Defendants' Objections based on this provision. However, Section 70505 of the MDLEA does not alter the outcome recommended by the R & R.

■ The crux of Defendant's argument is that because a district court may exercise jurisdiction under the MDLEA even if it would result in a violation of international law, the MDLEA must not have been enacted pursuant to the "Law of Nations" clause. This is an overly broad reading of Section 70505. This provision does not, as Defendants contend, authorize the United States to engage in wholesale violations of international law in criminal prosecutions. Rather, this provision simply limits the actors that have standing to challenge the validity of an MDLEA prosecution on international law grounds. Under section 70505, only foreign nations have standing to make such claims. It necessarily fol-

lows that standing to claim noncompliance with international law is thus denied to individuals, like Defendants here, absent state intervention. It does *not* necessarily follow that the MDLEA was enacted without regard to principles of international law. Instead, this statutory limitation on standing is fully consistent with a traditional understanding of the "Law of Nations." *See, e.g., Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1261 (11th Cir. 2009) ("Offenses against the law of nations principally involved the rights or interests of whole states or nations, and did not necessarily involve the private interests of individuals seeking relief in court."); *United States v. Noriega,* 746 F.Supp. 1506, 1533 (S.D.Fla.1990) (explaining in the context of a criminal case, "as a general principle of international law, individuals have no standing to challenge violations of international treaties in the absence of a protest by the sovereign involved"); *Ware v. Hylton,* 3 U.S. 199, 211–12, 3 Dall. 199, 1 L.Ed. 568 (1796) (finding that only national governments, not individuals, could claim violations of international treaty).

Accordingly, the Court finds that section 70505 of the MDLEA does not signify Congressional intent to "divorce[ ] the MDLEA from reliance on the Law of Nations." Rather, section 70505 expressly incorporates traditional notions of standing under international law into the statute. This section of the statute thus does not provide a basis to conclude that Congress was acted outside its power to "define and punish ... offenses against the Law of Nations" in enacting the MDLEA. U.S. Const., Art. I, s. 8, cl. 10.

### 2. Eleventh Circuit Precedent

Defendants further object on the basis that the Eleventh Circuit held in *United States v. Tinoco,* 304 F.3d 1088 (11th Cir. 2002), "that international law is not the basis for Congress's Article I authority to enact the MDLEA." (DE # 99 at 5). In

*Tinoco,* the Eleventh Circuit addressed the "jurisdictional element" of the MDLEA requiring consent from a foreign government to prosecute foreign nationals found on flagged foreign vessels on the high seas. *Id.* at 1107–10. The issue before the Court was whether this requirement was "an essential element of the MDLEA substantive offense [that had] to be submitted to the jury for proof beyond a reasonable doubt." *Id.* at 1109–10. The Eleventh Circuit found that it was not. *Id.* In a footnote, the Court stated:

> Our decision in this case should not be read as answering the more difficult question of whether Congress could label as non-elements of an offense those so-called "jurisdictional" provisions that are inserted into statutes for the purpose of providing Congress with substantive authority under Article I of the Constitution to regulate the conduct at issue.... With respect to the present case, it is clear ... that the ... jurisdictional requirement is not a necessary prerequisite for Congress's exercise of extra-territorial jurisdiction over drug trafficking activities that occur in international waters.

*Id.* at 1110, n. 21.

Defendants are presumably analogizing the governmental consent requirement in *Tinoco* to the similar requirement applicable here, that a foreign government consent to enforcement of United States law by the United States to a vessel in the foreign nation's territorial waters. *See* 46 U.S.C. § 70502(c)(1)(E). They argue that in the *Tinoco* footnote, the Eleventh Circuit held that "international law was not the basis of Congress's 'substantive authority under Article I of the Constitution to regulate the conduct at issue' in the MDLEA." (DE # 99).

This is inaccurate. The footnote draws the distinction between statutory jurisdictional requirements and constitutional jurisdictional requirements, and finds that the consent requirement in the MDLEA is statutory. To illustrate, the footnote goes on to compare the "jurisdictional element" in the MDLEA to provisions in federal criminal statutes like the Hobbs Act, 18 U.S.C. § 1951(a) and the Travel Act, 18 U.S.C. § 1952(a) that "require[ ] a particularized, case-by-case factual finding that some product or activity of the defendant relate in some way to interstate commerce." *Tinoco,* 304 F.3d at 1110 n. 21. Those provisions are "inserted into the statute to provide Congress with substantive authority under Article I of the Constitution." *Id.* The *Tinoco* Court found only that the requirement of government consent to a prosecution of persons onboard a vessel flying its flag was not of this latter, jurisdiction-creating type. The footnote cited by Defendants does not pass on whether the MDLEA was enacted pursuant to the "High Seas" language or the "Law of Nations" language of Article I, section 8, clause 10. It does not, as Defendants argue, state that "international law was not the basis" of Congress's legislative authority to enact the MDLEA. The footnote simply notes that Congress's Article I authority to legislate was not dependent upon the governmental consent requirement written into the MDLEA. Accordingly, the footnote has no bearing on the constitutional issues in the instant case. As explained above, the MDLEA is constitutional as applied to this case if Defendants' conduct constitutes an "offense against the Law of Nations." Defendants have cited no authority, and the Court has found none, for the proposition that the presence or absence of governmental consent would be determinative of this issue. The language cited from *Tinoco* is therefore inapposite.[4]

---

4. At a later point in Defendant's Objections,

Defendants concede that *Tinoco* is not on

■ Finally, Defendants argue that all the cases relied upon by the R & R are distinguishable because "the issue *sub judice* was neither presented, nor considered, by the courts expressing the opinions relied on by the R & R." (DE # 99 at 11). However, the R & R repeatedly acknowledged that this case presents an issue of first impression. (DE # 96 at 3, 5, 7, 8). Because by definition, no cases have decided this exact issue, the cases must be distinguishable on some level. However, Judge Bandstra, in a well-reasoned analysis, determined that the distinguishable facts in the relevant cases did not warrant a different outcome. The Court has reviewed and considered the R & R's analysis, and finds that Defendant's objections are not persuasive. The R & R's implicit findings that the "protective principle" and the "universality principle" of international law support the constitutionality of the MDLEA are sound. *See, e.g., United States v. Saac,* 632 F.3d 1203, 1210–12 (11th Cir.2011) (finding international drug trafficking subject to universal jurisdiction); *United States v. Estupinan,* 453 F.3d 1336, 1339 (11th Cir.2006) ("[T]he trafficking of narcotics is condemned universally by law-abiding nations."); *United States v. Tinoco,* 304 F.3d 1088, 1108 (11th Cir.2002) ("Congress, under the 'protective principle' of international law, may assert extraterritorial jurisdiction over vessels in the high seas that are engaged in conduct that 'has a potentially adverse effect and is generally recognized as a crime by nations that reasonably developed legal systems.'").

Furthermore, in enacting the MDLEA, Congress found that "trafficking in controlled substances aboard vessels is an international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States." 46 U.S.C. § 70501. These express Congressional findings are not accompanied by any qualifier that drug trafficking is only problematic if discovered on the high seas. Accordingly, the Court finds the Defendants' presence in the territorial waters of Panama does not signify that an "offense against the Law of Nations" was not committed. *See Sosa v. Alvarez–Machain,* 542 U.S. 692, 727, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) (cautioning that courts should be "particularly wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs").

## B. Statutory Jurisdiction

■ Finally, Defendants argue that the R & R erred in finding the MDLEA's statutory requirements for jurisdiction were met. More specifically, Defendants object on the ground that the R & R "implies that the defendants bear any burden with respect to establishing a lack of jurisdiction over the vessel. The Eleventh Circuit has held that the Government bears the burden of establishing jurisdiction over the vessel." (DE # 106 at 1) (citation omitted). The R & R did not place the burden on the defendants to establish a lack of jurisdiction. Rather, the R & R relied on a Certification from the United States Department of State, which

establishes that the Government of the United States has determined that the vessel was without nationality for purposes of 46 U.S.C. § 70502(d)(1); and that Panama by Diplomatic Note dated April 9, 2010, consented 'to the enforcement of the United States law by the United States' with respect to this case

point: "Similarly, *Tinoco* ... did not address either an international law or an Article I

challenge." (DE # 99 at 10).

as provided for in 46 U.S.C. § 70502(c)(1)(E). (DE # 96 at 4).

The MDLEA provides that "consent or waiver of objection by a foreign nation to enforcement of United States law by the United States under paragraph (1)(C) or (E) . . . is proved conclusively by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. § 70502(c)(2)(B). Accordingly, the R & R did not find that defendants had the burden to establish lack of jurisdiction. Rather, it correctly found that the Government has met its burden of establishing jurisdiction under the MDLEA.

### III. Conclusion

After a careful review of the record and the Court being otherwise fully advised, it is hereby **ORDERED, ADJUDGED, and DECREED** that Magistrate Judge Ted E. Bandstra's February 11, 2011 Report and Recommendation **(DE # 96)** be, and the same is, hereby **AFFIRMED and ADOPTED.** Defendants' Motion to Dismiss Indictment Based on Lack of Jurisdiction and Unconstitutionality of the Statute **(DE # 61)** is **DENIED.** The above-styled action will proceed, and **SHALL** be set for trial by separate Order of the Court.

### REPORT AND RECOMMENDATION

TED E. BANDSTRA, United States Magistrate Judge.

This cause is before the Court on [Yimmi Ballaizac–Hurtado's] Motion to Dismiss Indictment Based on Lack of Jurisdiction and Unconstitutionality of the Statute (D.E. 61) filed on January 14, 2011.[1] On January 18, 2011, this motion was referred to the undersigned for appropriate pro-

ceedings by the Honorable James Lawrence King pursuant to 28 U.S.C. § 636(b). Accordingly, the undersigned conducted a hearing on this motion on January 20, 2011. Thereafter, the Court received additional memoranda of law from both the government and the moving defendants. Following careful review of the pleadings, the court file, and applicable law, and in consideration of oral argument of counsel, the undersigned recommends that Defendant's Motion to Dismiss Indictment [Etc.] be DENIED.

### PROCEDURAL HISTORY

On March 25, 2010, a federal grand jury in Miami, Florida, returned an indictment charging Yimmi Ballaizac–Hurtado and his three co-defendants with conspiracy to possess a controlled substance (cocaine) and possession of a controlled substance within intent to distribute in violation of Sections 70506(a) and (b) of the Maritime Drug Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70502 et seq., and 21 U.S.C. § 960(d)(1)(B). The government has proffered and evidence has been previously introduced at a suppression hearing in this case revealing that defendants were aboard a fishing vessel first observed traveling at night just off shore the country of Panama—within the territorial waters of that country. The government has further proffered that this vessel was pursued and stopped by Panamanian law enforcement officials who suspected that the vessel was being used to transport a large quantity of cocaine. The government further proffers that evidence at trial will prove that all of four defendants were aboard the subject vessel before it was stopped in Panamanian waters after which they abandoned the

---

1. All three co-defendants have moved to adopt/join in this motion on the basis that they have identical standing to raise the jurisdictional and constitutional issues raised therein. The undersigned has granted these motions to adopt so. That all four defendants are now referred to as "moving defendants" in this Report and Recommendation.

boat. Defendants were subsequently arrested in Panama and transported to the United States with the consent of Panamanian authorities for prosecution here.

Defendants had moved to dismiss the indictment on two grounds. First, defendants argue that this Court lacks jurisdiction over in this case under the MDLEA because the subject vessel in which they allegedly traveled was within the territorial waters of either Colombia or Panama during the "entirety of the alleged criminal activity" with no evidence that the drugs found aboard the vessel were destined for the United States. Second, defendants argue that the MDLEA, if found to support this Court's jurisdiction, is unconstitutional as applied here because Congress' power under Article 1 of the United States Constitution to punish felonies on the high seas does not encompass the power to prosecute a drug trafficking offense that took place between two foreign nations where their arrests were not made in international waters.

The government opposes dismissal arguing that this Court has jurisdiction under Section 70502(c)(1)(E) of the MDLEA which defines "a vessel subject to the jurisdiction of the United States" to include a vessel "in the territorial waters of a foreign nation" if that nation consents to the enforcement of United States law by the United States. Second, the government contends that the MDLEA is not unconstitutional as applied here because Congress has the authority to extend United States jurisdiction into territorial waters of another country under the "law of the nations" provision of the "high seas and felonies" clause found in Article 1 of the United States Constitution.

While disagreeing on both issues, the government and defendants agree that this is a case of first impression under the unique facts of this case.

## ANALYSIS

### A. Jurisdiction Under the MDLEA

Defendants first move for dismissal on the ground that the fishing vessel on which they allegedly traveled was not a "vessel subject to the jurisdiction of the United States" because that vessel was within the territorial waters of either Colombia or Panama "during the entirety of the alleged criminal activity in this case." Motion, pg. 2. Defendants argue that the vessel's voyage originated in Colombia and that there is no allegation or proof that the vessel traveled in international waters or that the drugs allegedly found aboard that vessel were destined for the United States. Defendants contend that they were arrested in Panama without any allegation that "this case bears any relationship at all to the United States" so that this Court lacks jurisdiction under the MDLEA.

The government responds by noting that defendants are charged under 46 U.S.C. § 70503(a) which provides in relevant part:

(a) ... An individual may not knowingly or intentionally ... possess with intent to ... distribute a controlled substance on board—

(1) a vessel ... "subject to the jurisdiction of the United States"....

(b) [This prohibition] ... applies even though the act is committed outside the territorial jurisdiction of the United States.

The government further relies on Sections 70502(c)(1)(A) and (E) of the MDLEA which define a "vessel subject to the jurisdiction of the United States" to include:

(A) a vessel without nationality; [and]

(E) a vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States;....

The government then offers a Certification from the United States Department of

State dated January 13, 2011, which sets forth facts concerning the interdiction of defendants' vessel in Panamanian territorial waters on March 2, 2010. Moreover this Certification establishes that the Government of the United States has determined that the vessel was without nationality for purposes of 46 U.S.C. § 70502(d)(1); and that Panama by Diplomatic Note dated April 9, 2010, consented "to the enforcement of the United States law by the United States" with respect to this case as provided for in 46 U.S.C. § 70502(c)(1)(E). Thus, the government maintains that this Court has statutory jurisdiction over this case pursuant to these provisions of the MDLEA.

Reviewing the jurisdictional issue, the undersigned finds that defendants' vessel was "subject to the jurisdiction of the United States" as a "vessel without nationality" under 46 U.S.C. § 70502(c)(1)(A); and as a vessel "in the territorial waters of a foreign nation" (Panama) which has consented to the enforcement of United States law here as provided for under 46 U.S.C. § 70502(c)(1)(E). Defendants offer no evidence to refute the government's allegation of "statelessness" of the vessel or to challenge the authority of the State Department's Certification establishing Panama's official consent for prosecution of this case in the United States. Accordingly, the undersigned finds no basis to dismiss this case based on lack of statutory jurisdiction under the MDLEA.

### B. *Constitutionality of the MDLEA as Applied in this Case*

Defendants next contest the constitutionality of the MDLEA as applied to their alleged criminal conduct on the ground that the Congress lacked the authority to extend the jurisdiction of the United States to vessels such as theirs only observed and interdicted in the territorial waters of Panama, without any evidence that the cocaine allegedly aboard the vessel was destined for the United States. Essentially, defendants maintained that the MDLEA rests on Congress' authority under article I, section 8, clause 10 of the Untied States Constitution which is limited to felonies occurring aboard vessels on the high seas. Here, defendants contend, the charged offenses involve transportation of cocaine between Colombia and Panama only with no allegation or proof that the subject vessel traveled in international waters before being interdicted in Panama. Defendants note that this is an issue of "first impression" in that no reported judicial decisions involved a constitutional challenge to United States jurisdiction over a vessel located in the territorial waters of another country involving offenses which bear no nexus to the United States.

The government concedes that this a case of first impression and that Congress' authority to enact the MDLEA rests on the "piracy and felonies on the high seas" provision of the United States Constitution. In its initial response, the government simply noted that federal courts including courts in this circuit have uniformly rejected this same argument finding that the MDLEA has no requirement of a nexus between a defendant's criminal conduct and the United States. See e.g., *United States v. Estupinan,* 453 F.3d 1336, 1338 (11th Cir.2006); see also, *United States v. Rendon,* 354 F.3d 1320, 1325 (11th Cir.2003). In subsequent briefings, the government addresses the "territorial waters" aspect of this case and contends that the authority of Congress for this provision of the MDLEA is found in the "offenses against the law of the nation" clause contained in Article I, section 8, clause 10 of the Constitution.

Article I, Section 8, Clause 10 of the United States Constitution, sometimes referred to as the "High Seas Clause", provides that Congress shall have power

To define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations;

In *United States v. Garcia*, 182 Fed.Appx. 873 (11th Cir.2006), the Eleventh Circuit Court of Appeals upheld the constitutionality of the MDLEA as a proper exercise of congressional power under the "High Seas Clause" in a case involving the seizure of cocaine aboard a vessel intercepted and boarded in international waters. In so ruling, the court affirmed earlier decisions rejecting arguments that the MDLEA is unconstitutional because the criminal conduct at issue lacked a nexus to the United States. See *United States v. Rendon*, supra; *United States v. Mena*, 863 F.2d 1522, 1527 (11th Cir.1989) (rejecting facial challenge to the MDLEA based on a lack of a "meaningful relationship" to the United States); *United States v. Stuart-Caballero*, 686 F.2d 890, 891 (11th Cir.1982) (per curiam) (rejecting facial challenge to predecessor statute of the MDLEA for lack of a nexus requirement). These and other cases have clearly established the constitutionality of the MDLEA in cases involving drugs found on vessels intercepted in international waters.

The instant case, however, presents a different but related issue, that is, the constitutionality of the MDLEA when charged in a case involving a vessel first found in the territorial waters of a foreign state. More specifically, the Court must decide whether such a prosecution is constitutionally permitted under the "offenses against the law of nations-clause as urged by the government here. While not specifically addressed in *Garcia, supra*, the Eleventh Circuit noted that the district court decision below found that drug trafficking "constituted an offense against the law of nations" and thus empowered Congress to criminalize it pursuant to that clause. The district court's unpublished decision in *Garcia* appears to be consistent with the Eleventh Circuit's prior decision in *United States v. Tinoco*, were the Appellate court noted "that Congress, under the 'protective principle' of international law may assert extraterritorial jurisdiction over vessels in the high seas that are engaged in conduct that 'has a potentially adverse effect and is generally recognized as a crime by nations that have reasonably developed legal systems.'" 304 F.3d 1088, 1108 (11th Cir.2002) (quoting *United States v. Gonzalez*, 776 F.2d 931, 939 (11th Cir.1985)). Once again, however, the undersigned notes that *Tinoco*, and all other decisions upholding the facial constitutionality of the MDLEA have involved vessels located on the high seas.

More recently, the district court in *United States v. Salcedo-Ibarra*, 2009 WL 1953399 (M.D.Fla.) (*Whittmore, J.*), reviewed the MDLEA in another "high seas" situation and found it constitutional despite the lack of a nexus between defendant's alleged conduct and the United States. Most significant to the instant case is the Court's discussion of the MDLEA and its constitutional base:

The MDLEA is a constitutional exercise of extraterritorial jurisdiction pursuant to the Define and Punish Clause, under the "protective principle" of international law, *Tinoco*, 304 F.3d at 1110. Likewise, as applied to foreign nationals such as Defendant, the MDLEA is constitutional. [*U.S. v.*] *Estrada Obregon*, 270 Fed.Appx. [978] at 979 (2008) . International drug trafficking, as proscribed by the MDLEA, is universally condemned as an offense against the "Law of Nations" and presents a specific threat to the security and societal well-being of the United States. *United States v. Estupinan-Estupinan*, 244 Fed.Appx. 308 (11th Cir.2007). Just as trafficking in narcotics on the high seas is considered an offense against the "Law of Nations," including the United States, likewise, conspiring to traffic in

narcotics on the high seas constitutes such an offense.

*Id.* at *3. While *Salcedo–Ibarra* is a "high seas" case and not "directly on point" as contended by the government, the undersigned finds support in that decision for the government's position that the MDLEA is grounded on the "law of nations" language in Article 1, Section 8, Clause 10 and need not be restricted to "high seas" cases as urged by defendants in this case.

In summary, the undersigned finds no clear authority directly on point involving the circumstances of this case. This truly appears to be a case of first impression involving the constitutionality of the MDLEA as applied in a "territorial waters" context. Still, the undersigned finds that several cases cited above have recognized that the MDLEA is constitutionally grounded on the "law of nations" provision in the subject clause in that drug trafficking is "universally condemned" by various nations with "reasonably developed" legal systems. See *United States v. Rendon*, 354 F.3d at 1325. As explained in *Rendon*, "Congress enacted the MDLEA because drug trafficking aboard vessels (1) 'is a serious international problem and is universally condemned' and (2) "'presents a specific threat to the security and societal well-being of the United States.'" 46 U.S.C.App. § 1902. Thus, the undersigned concludes that the extraterritorial provisions of the MDLEA, including the "territorial waters of a foreign nation" provision contained in Section 70502(c)(1)(E), should not be found unconstitutional as applied to this case.

### RECOMMENDATION

For all of the foregoing reasons, the undersigned recommends that Defendant's Motion to Dismiss Indictment Based on Lack of Jurisdiction and Unconstitutionally of the Statute be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable James Lawrence King, United States District Court Judge, within ten (10) days of the receipt. See 28 U.S.C. § 636(b)(1)(c); *United States v. Warren*, 687 F.2d 347, 348 (11th Cir.1982), cert. Denied, 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983); and *Hardin v. Wainwright*, 678 F.2d 589, 592 (5th Cir. Unit B.1982); see also *Thomas v. Arn*, 474 U.S. 140, 153, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

RESPECTFULLY SUBMITTED in Miami, Florida this 11th day of February,